## FIDELITY & DEPOSIT CO. OF MARYLAND v. UNION TRUST CO. OF ROCHESTER, N. Y.

### No. 255.

Circuit Court of Appeals, Second Circuit.
July 21, 1942.

Raines & Raines, of Rochester, N. Y. (William M. Marks, of Rochester, N. Y., of counsel), for plaintiff-appellee and appellant.

Harris, Beach, Folger, Keating & Wilcox, of Rochester, N Y. (Kenneth B. Keating and Frederick T. Pierson, both of Rochester, N. Y., of counsel), for defendant-appellant and appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

London Guarantee & Accident Company (which we shall call London) is a casualty company doing business in Rochester, New York. The offices were in charge of one O'Connell, whose duties consisted of investigation and settlement of claims resulting from accidents involving automobiles insured by the company. O'Connell entered into a conspiracy with a doctor named Kauffman and with others to defraud the company by making fraudulent claims to the home office of London for alleged accidents.

By false reports O'Connell obtained authorizations to settle what his company believed to be legitimate claims and pursuant thereto issued three drafts signed by him as agent for London drawn on the Chemical Bank of New York. Draft Exhibit 2 for $300 was made payable to the order of Donald Gilbert, whose real name was Frank Graves. Draft Exhibit 4 for $1200 was made payable to the order of Sally Johnson whose real name was Bernice Levin. Draft Exhibit 7 for $2500 was payable to the order of James Giambrone and Josephine Giambrone.

The claims settled by the drafts payable to Gilbert for $300 and to Johnson for $1200 were based on a prearranged automobile accident wherein, as had been agreed among Graves, Levin, Kauffman and one Geck, Geck ran into a car in which Graves and Levin were seated. The latter were uninjured by the impact, but were paid $25 and $50, respectively, for their part in the conspiracy. They endorsed the drafts for $300 and $1,200 made payable to them under the assumed names of Gilbert and Johnson and turned them over to Kauffman, who endorsed them personally and deposited them to the credit of his account with the defendant Union Trust Company of Rochester. The drafts were endorsed and collected by it from the Chemical Bank. Under the regular practice of the latter, London examined such drafts prior to payment by Chemical and then, as in the case at bar, drew checks in favor of Chemical for the amount of the drafts which it had examined and approved.

The endorsement of the draft for $2,500 payable to James Giambrone and Josephine Giambrone was not made by them. Their signatures were forged by Kauffman, who added his personal endorsement as he had done in the case of the other two drafts and then deposited the draft to the credit of his account with the Union Trust Company. The latter collected it in the same way as the others.

O'Connell had adjusted all three claims. It was proved that he was with Kauffman when the fraudulent accident was planned with Geck, Graves and Levin and that he was a prime factor in the conspiracy to defraud London.

The plaintiff had issued a Fidelity bond covering the malfeasance of London's employee O'Connell and had reimbursed London for the three fraudulent drafts that he had drawn. Thereafter it brought this action, under an asserted right of subrogation, to recover from the defendant the amount of the drafts and interest, upon the theory that the latter had charged London with the payments under forged endorsements.

Judge Burke, before whom the case was tried, granted judgment for the plaintiff upon the cause of action based on the Giambrones' draft on the ground that the signatures of the Giambrones were actually forged and that therefore the defendant had derived no title to the draft and had no

right to collect it from London. He dismissed the cause of action based on the Gilbert and Johnson drafts on the ground that the latter were real persons, although using aliases to aid them in their fraudulent schemes, that London intended to authorize drafts to be issued to the persons calling themselves "Gilbert" and "Johnson," who had actually made the claims, and that title to the drafts, therefore, passed to the defendant, which was entitled to collect them.

The $2,500 draft payable to the Giambrones read as follows:

"No. L 103009

"London

"Guarantee and Accident Company, Ltd.

"Issued at Rochester, N. Y.   July 23, 1931

"Upon Acceptance

"Pay to the order of James Giambrone & Josephine Giambrone ($2500.00) the sum of Twenty-five Hundred and no/100.... Dollars.

"When properly endorsed on the back hereof, this draft becomes and constitutes a release in full for the payment of All Claims * * * against Giovanni Centola on account of accident on or about May 23, 1931.

"Assured:   Giovanni   Centola   Claimant: Josephine Giambrone

"Policy No.:KD544573      H. O. Claim No. AL270781

"Agency Claim No.:25511

"To

"The Chemical Bank & Trust Co.
        of New York
    "Fifth Avenue Branch
    "5th Avenue at 29th Street
"A            1-12
            "London Guarantee and Accident
                    Company, Ltd.
            "By John J. O'Connell
                "Claim Department

"This draft must be endorsed in ink and presented for collection within ten days."

■ The endorsement of the defendant-bank on this draft, which it caused to be presented through the New York Clearing House for payment, read: "Pay to the order of any bank or trust company. All prior endorsements guaranteed." In endorsing and presenting this draft for payment in a case where its title was founded on the Giambrones' forged endorsement it became liable under its guarantee to the drawee, which was, technically, the Chemical Bank. Such a guarantee as that endorsed on the draft would have been imposed as a matter of law from the endorsement "Pay any bank or banker" under Section 350-c of the Negotiable Instrument Law of New York, Consol. Laws c. 38, without separate words of guaranty. The reasonable inference from the practice of Chemical to pay drafts only when approved by London and when reimbursed is that it acted only as a disbursing agent whose rights as drawee passed to London when the latter paid for the draft. London acquired no claim against Chemical and was in effect the drawee or payor of the draft in spite of the fact that the instrument was addressed to Chemical. Accordingly the defendant having guaranteed all prior endorsements became liable to the party who had really suffered the loss, namely, London, when the latter had paid the draft to which the defendant had acquired no title. The decision in General Fire Assurance Co. v. State Bank, 177 App.Div. 745, 164 N.Y.S. 871, is not in point because the plaintiff there was attempting to sue an intermediate endorser when its only wrong was that the drawee bank had made an unauthorized charge against its account while in the present case Chemical paid the draft by the specific authority of the plaintiff. If, as the court below thought, London was the drawee despite the form of the draft, there can be no question about its right to recover against the defendant under the latter's guaranty as well as under the terms of Section 350-c of the Negotiable Instruments Law. If, on the other hand, as we think more probable, Chemical was technically the drawee, London acquired the drawee's rights because it was arranged between the two that London should approve each draft before payment and forthwith reimburse Chemical. Caledonian Insurance Co. v. National City Bank, 208 App.Div. 83, 203 N.Y.S. 32.

■ It is argued on behalf of the defendant that there was no adequate proof of two of the fiduciary bonds furnished by the plaintiff to London. The testimony in respect to plaintiff's inability to produce the original two bonds justified the admission of secondary evidence so that the objection lacks merit.

■ The defendant also argues that it is entitled to a setoff because the plaintiff has recovered $1,265.02 in an action brought against O'Connell to recover loss-

es sustained through his malversations. There is no evidence that the moneys recovered from O'Connell were those received through the payment of the drafts involved in the present action, and plaintiff paid London $12,622 representing losses sustained through O'Connell's defalcations. We find no basis for the setoff. Shipman v. Bank of State of New York, 126 N.Y. 318, 27 N.E. 371, 12 L.R.A. 791, 22 Am. St.Rep. 821; Yanowe & Co. v. American Exchange Irving Trust Co., 226 App.Div. 530, 234 N.Y.S. 603.

For the above reasons we hold that the judgment allowing recovery of the moneys expended in indemnifying London for its losses in respect to the Giambrone drafts must be affirmed.

■ The Gilbert and Johnson drafts are in a different category from the Giambrone drafts. Gilbert and Johnson were the fictitious names of Graves and Levin, who were real persons having claims which (though fraudulent) London intended to pay. When the defendant-bank became the endorser of their drafts it acquired good title under the New York law, and the endorsements which it guaranteed, though made under assumed names, were genuine endorsements. Recovery could not be had by London in such a case and hence cannot be had by the plaintiff as its subrogee. Halsey v. Bank of New York & Trust Company, 270 N.Y. 134, 200 N.E. 671; Strang v. Westchester County National Bank, 235 N.Y. 68, 138 N.E. 739; American Surety Co. v. Empire Trust Co., 237 App.Div. 522, 262 N.Y.S. 140; modified 241 App.Div. 669, 269 N.Y.S. 992, and as modified affirmed 265 N.Y. 484, 193 N.E. 282; Cohen v. Lincoln Savings Bank, 275 N.Y. 399, 10 N.E.2d 457, 112 A.L.R. 1424. It is insisted on behalf of the plaintiff that London in effect paid drafts drawn to fictitious persons and that when their aliases were endorsed on the Graves and Levin drafts there was a forgery. The persons whom London intended to pay when it approved these drafts were the persons making the claims filed with it by its disloyal agent O'Connell. These were real persons and it can make no difference in this case that they used aliases and participated in a fraud. The doctrine of Shipman v. Bank of State of New York, 126 N.Y. 318, 27 N.E. 371, 12 L.R.A. 791, 22 Am.St.Rep. 821, and City of New York v. Bronx County Trust Co., 261 N.Y. 64, 184 N.E. 495, is not applied by the New York courts to a situation where the pay-

ees are real persons using assumed names to perpetrate a fraud. Halsey v. Bank of New York & Trust Company, supra. Accordingly the claims based upon the Gilbert and Johnson drafts were properly dismissed.

Judgment affirmed.